UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

WILLIAM IBIANSKI,

        Defendant,

and

THYSSENKRUPP MATERIALS NA,
INCORPORATED PENSION PLAN
COMMITTEE,

        Garnishee-defendant.
_____/

Case Number 08-51116
Criminal Case Number 07-20632
Honorable David M. Lawson

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION FOR AN ORDER DIRECTING PAYMENTS FROM THE DEFENDANT'S PENSION PLAN, DENYING WITHOUT PREJUDICE NON-PARTY THYSSENKRUPP MATERIALS NA, INC.'S MOTION TO DIRECT GARNISHEE TO PAY A PORTION OF DEFENDANT'S MONTHLY PENSION BENEFITS, AND AMENDING CRIMINAL JUDGMENT**

This garnishment matter is before the Court on parallel motions by non-party ThyssenKrupp Materials NA, Inc. (ThyssenKrupp) and by the government to direct payment of restitution due to the victim by the custodian of the defendant's pension plan. Defendant William Ibianski was sentenced on October 23, 2008 after pleading guilty to interstate transportation of a security taken by fraud. As part of the judgment of sentence, Ibianski was ordered to pay restitution of $1,116,102.73 to his employer, Copper and Brass Sales, Inc., who was identified by the government in its indictment as "Copper and Brass," an affiliate of ThyssenKrupp USA, NA, Inc., and its

insurer, Zurich American Insurance Company (Zurich). In addition to Zurich, the restitution provision of the judgment identifies the payee as "Copper Brass."

The Court previously denied a motion to direct payment by ThyssenKrupp, because that entity was not one of the two victims named in the judgment of restitution entered in the related criminal case. ThyssenKrupp and the government subsequently filed renewed motions in the garnishment case asking the Court to amend the criminal judgment to correct an apparent misnomer of the corporate victim, and to direct payment of amounts payable under the defendant's pension plan. The motion to amend the criminal judgment was not filed under the docket number in the criminal case, however.

The Court believes it has the authority to amend the judgment in the criminal case under Federal Rule of Criminal Procedure 36 and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A to identify correctly the name of the victim entitled to restitution, and it will do so. However, neither the government nor non-party ThyssenKrupp has furnished enough information about Ibianski's retirement plan to allow the Court to direct monthly payments under a writ of garnishment. Therefore, the Court will grant the government's motion to amend the criminal judgment and deny the motions in all other respects without prejudice to the parties renewing their motions with additional information after the judgment in the criminal case is corrected.

I.

Ibianski pleaded guilty to interstate transportation of a security taken by fraud on June 17, 2008. The basis for Ibianski's conviction was his participation in a scheme to defraud his employer, Copper and Brass Sales, Inc. Ibianski, who was Copper and Brass's corporate tax director and had authority to issue checks on behalf of the company, would issue Copper and Brass's checks to repay

debts to his gambling accomplice Robert Kolo. Kolo, who owned an automobile parts manufacturing business in Orchard Lake, Michigan, would accept Ibianski's checks — about 75 of them, totaling some $1,116,102.73 — which created the appearance that Copper and Brass paid Kolo's business for the sold parts.

On October 23, 2008, Ibianski was sentenced to thirty months in custody followed by three years of supervised release. The Court directed the defendant to pay $1,116,102.73 in restitutionary payments to "Copper Brass" and its insurer. In the column for "Additional Terms for Criminal Monetary Penalties," the Court stated: "The Court recommends that the defendant's pension be allocated towards restitution."

On November 20, 2008, the United States served a writ of garnishment in the present action on ThyssenKrupp Materials NA, Inc.'s Pension Plan Committee (Plan) to collect from Ibianski's pension. ThyssenKrupp then moved for an order directing the Plan to transfer Ibianski's pension to ThyssenKrupp in satisfaction of his restitutionary obligations. On July 16, 2009, the Court ordered briefing regarding the effect of the anti-alienation provision of the Employee Retirement Income Security Act of 1972 (ERISA) on the requested distribution.

The Court denied ThyssenKrupp's motion on January 15, 2010 in an order stating:

> For the reasons stated on the record, the Court concludes that spousal consent is required before the movant can withdraw the defendant's pension as a lump sum. The movant failed to verify that the spouse consented to withdrawal of the defendant's pension. Therefore, the Court will deny ThyssenKrupp's motion without prejudice.

Undeterred, ThyssenKrupp filed a motion on April 27, 2011, arguing that under the terms of the Plan, Ibianski could elect to receive his pension in monthly installments without his wife's consent. ThyssenKrupp believed it could step into Ibianski's shoes and elect to receive the pension benefit in this manner and garnish the proceeds. The Court denied that motion on May 26, 2011,

stating in an order that "ThyssenKrupp is not one of the two victims in the judgment and commitment, and the Court may not order payment of restitution to non-victims of the offense of conviction."

ThyssenKrupp again seeks to recover from Mr. Ibianski's pension, raising the same argument as before. This time, ThyssenKrupp has described how "Copper Brass" is related to ThyssenKrupp. The government has filed a parallel motion seeking the same relief, which discusses how Copper and Brass Sales, Inc. is related to ThyssenKrupp and argues that the Court should allow ThyssenKrupp to receive restitution originally ordered to "Copper Brass." The government also filed a "Notice of Name Change of Corporate Victim," which purports to change the name of the victim "Copper Brass" to "ThyssenKrupp Materials NA, Inc."

ThyssenKrupp reports that is now has an email from Mrs. Ibianski in which she states that she will not consent to a lump-sum distribution of the Plan.

II.

A.

The government argues that Federal Rule of Civil Procedure 25(c), which provides for the continuation of litigation when an interest has been transferred, allows a district court, in its discretion, to substitute a party where a transfer of interest has occurred. That argument is a nonstarter for several reasons. *First*, it appears that ThyssenKrupp maintains that Copper and Brass Sales, Inc. was an assumed name for ThyssenKrupp Materials NA, Inc. well before Ibanski committed his fraud. "Rule 25(c) applies only to transfers of interest occurring during the pendency of litigation and not to those occurring before the litigation begins." *Andrews v. Lakeshore Rehabilitation Hosp.*, 140 F.3d 1405, 1407 (11th Cir. 1998) (citing *National Ind. Theatre Exhibitors,*

*Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 610 (11th Cir. 1984); *Mizukami v. Buras*, 419 F.2d 1319, 1320 (5th Cir. 1969)); *see also Blachy v. Butcher*, 221 F.3d 896, 911 (6th Cir. 2000) (quoting *Luxliner P.L. Export Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 71 (3d Cir. 1993) ("'[a]lthough substitution is usually effected during the course of litigation, substitution has been upheld even after litigation has ended as long as the transfer of interest occurred during the pendency of the case.'").

*Second*, the procedural requirements of Rule 25(c) have not been met. Rule 25(c) requires that the filing, notice, and service requirements of Rule 25(a)(3) be followed. Rule 25(a)(3) states that "[a] motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." That has not been done here.

*Third*, and most importantly, it is a *criminal judgment* that the government seeks to modify. "The Federal Rules of Civil Procedure do not apply in criminal proceedings." *United States v. Campbell*, 96 F. App'x 966, 968 (6th Cir. 2004) (citing Fed. R. Civ. P. 1; *United States v. Mosavi*, 138 F.3d 1365, 1366 (11th Cir. 1998). It is true that "[t]he MVRA permits the government to enforce a restitution order 'by all other available and reasonable means,' 18 U.S.C. § 3664(m)(1)(A), including 'in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law.' 18 U.S.C. § 3613(a)." *United States v. Miller*, 588 F. Supp. 2d 789, 796 (E.D. Mich. 2008). "Yet it is still true under the MVRA, as it was under the [Victim and Witness Protection Act of 1982], that '[t]he inclusion of this civil enforcement provision does not transform the restitution order into an action at common law.'" *United States v. DuBose*, 146 F.3d 1141, 1148 (9th Cir. 1998) (quoting *United States v. Satterfield*, 743 F.2d 827, 839 (11th Cir. 1984)).

B.

The government also argues that the Court could amend the criminal judgment under Federal Rule of Criminal Procedure 36. That rule states: "After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36.

Under this rule, only "clerical errors" in a judgment are subject to correction. A clerical error "must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature." *United States v. Robinson*, 368 F.3d 653, 656 (6th Cir. 2004) (internal quotations omitted). Rule 36 "is not a vehicle for the vindication of the court's unexpressed sentencing expectations, or for the correction of errors made by the court itself." *United States v. Coleman*, 229 F.3d 1154, 2000 WL 11824600, at *2 (6th Cir. Aug. 15, 2000) (unpublished) (internal quotations omitted). Although Federal Rule of Criminal Procedure 36 authorizes a court to amend a judgment to conform with its express sentencing intention, *United States v. Carr*, 421 F.3d 425, 433 (6th Cir. 2005); *United States v. Libby*, 79 F.3d 1149, 1996 WL 117499, at *2 (6th Cir. 1996) (unpublished) (amending sentence to conform with what had been discussed at the hearing on the defendant's supervised-release violation), it does not authorize "'the amendment of a sentencing order to conform with an unexpressed sentencing intention.'" *Carr*, 421 F.3d at 433 (quoting *Robinson*, 368 F.3d at 657 (emphasis in original)).

As the Sixth Circuit explained in *United States v. Young Ko*, 485 F. App'x 102, 106 (6th Cir. 2012):

> A district court "may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Fed. R. Crim. P. 36. Courts have "consistently interpreted [the rule] as dealing only with clerical errors, not with mistakes or omissions by the court."

> *United States v. Penson*, 526 F.3d 331, 335 (6th Cir. 2008) (citation omitted). Unambiguous oral pronouncements control over written entries. *Id.* at 334. "Rule 36 authorizes a court to correct only clerical errors in the transcription of judgments, not to effectuate its unexpressed intentions at the time of sentencing." *United States v. Carr*, 421 F.3d 425, 432–33 (6th Cir. 2005) (citation omitted).

The question presented here is whether the reference in the criminal judgment to "Copper Brass" can be changed to "ThyssenKrupp Materials NA, Inc." ThyssenKrupp has furnished evidence that the two are really one and the same. ThyssenKrupp submitted the affidavit of Annette Skiba, a Senior Vice President, Treasurer, and Chief Accounting Officer of ThyssenKrupp Materials NA, Inc. Skiba states that no entity named "Copper Brass" is known to have existed, and she assumes that the original restitution order was referring to Copper and Brass Sales, Inc. Ms. Skiba then walks through Copper and Brass Sales, Inc.'s corporate lineage. She avers that TMX is a wholly-owned subsidiary of ThyssenKrupp Materials NA, Inc. TMX purchased all of the issued and outstanding stock of Copper and Brass Sales, Inc. on January 1, 1997. The two companies merged on October 1, 2002. The surviving company was named Copper and Brass Sales, Inc., but this company immediately changed its name to ThyssenKrupp Materials, Inc. ThyssenKrupp Materials, Inc. and ThyssenKrupp Materials NA, Inc. merged on January 1, 2007, with the surviving company being ThyssenKrupp Materials, Inc. Immediately after the merger, ThyssenKrupp Materials, Inc. was renamed ThyssenKrupp Materials NA, Inc. A division of ThyssenKrupp Materials NA, Inc. was still known as "Copper and Brass Sales, Inc." at the time of Mr. Ibianski's crime, and Mr. Ibianski worked in that division.

Although Skiba's affidavit establishes the identity of the two nominal businesses, the focus of Rule 36 must be on the Court's intention when pronouncing the sentence, and specifically the restitution order. In *United States v. Portillo*, 363 F.3d 1161 (11th Cir. 2004), the Eleventh Circuit

upheld a lower court's decision to use Rule 36 to change the names of the victims in the court's judgment and commitment. *Portillo*, 363 F.3d at 1165. The written judgment in that case ordered restitution to be paid to the Georgia Bureau of Investigation ("GBI"), even though at sentencing, the judge had ordered restitution to be paid to six individual aliens who were the victims of the defendant's scheme. *Id.* at 1163-64. Using Rule 36, the district court amended the judgment and commitment to replace GBI with the six individuals as the recipients of the restitution payments. *Id.* at 1164. The Eleventh Circuit upheld the district court's decision because the judge had orally stated his intention that the six individual victims receive restitution. *Id.* at 1165.

Here, the transcript of Mr. Ibianski's sentencing hearing mentions both "Thyssen" and "Copper and Brass" at various points. Mr. Ibianksi's lawyer stated that "the victim is Thyssen" when discussing whether the victim was a financial institution for the purposes of guidelines scoring. He states that "the money . . . is really Thyssen's money." On this point, the Court asked the prosecutor if it was "his position that the money belonged to the bank. . . ." The Court then stated, "Thyssen might take issue with that." In deciding this issue, the Court stated, "The money . . . was derived from ThyssenKrupp or Copper and Brass, as the case may be." Later in the hearing, the Court referred to "the debt [Mr. Ibianski] has to Thyssen." Also present at the hearing was Morley Witus, an attorney for the "corporate victim." Mr. Witus mentioned that Annette Skiba, "the General Vice President and Chief Accounting Officer of ThyssenKrupp Materials North America," was "here today . . . because this crime and this sentencing is very important to the company. . . ."

It is clear from reading the sentencing transcript that the Court considered "Copper Brass" to be the same as ThyssenKrupp. Counsel for ThyssenKrupp appeared on the record to represent "the victim" at the hearing, and both the Court and counsel referred to ThyssenKrupp by name many

times during the hearing. The Court's scrivener simply used the name "Copper Brass" in its order of restitution because that was the name that appeared in the indictment. However, there does not appear to have been any confusion among the parties — and the Court expressed none — about the fact that when the Court used the misnomer "Copper Brass" it was referring to ThyssenKrupp. Reading the record of the sentencing as a whole, it is plain that the Court expressed its intent on the record that restitution was due to ThyssenKrupp, and the Court therefore has authority under Rule 36 to amend the judgment in order to conform the text of the written judgment with its oral judgment of sentence on the record.

Moreover, even if Rule 36 does not permit the Court to amend the sentence, the Mandatory Victim Restitution Act does, because the Court has a duty under the law to ensure that the victim receives restitution, which it cannot fulfill unless the proper victim is named in the judgment. The MVRA states: "Notwithstanding any other provision of law, when sentencing a defendant convicted of [a specified] offense . . ., the court shall order . . . that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). The Supreme Court has held that the MVRA allows a sentencing court to amend a judgment that included an order of restitution without a precise amount, in order to fill in the amount of restitution required, even if it has missed the 90-day "deadline" for determination of the amount set forth in the MVRA. *Dolan v. United States*, 560 U.S. 605, 619-20 (2010). Moreover, because filling in the amount of an indefinite restitution order does not "correct an error" in the sentence, the 14-day deadline in Federal Rule of Criminal Procedure 35 does not limit the time for the Court to amend the restitution order. "[T]he [MVRA] provides adequate authority to . . . fill in an amount-related blank in a judgment that made clear that restitution was

-9-

'applicable.' Since the sentencing judge's later order did not 'correct' an 'error' in the sentence, [Federal Rule of Criminal Procedure] 35 does not apply." *Id.* at 620.

Rule 36 allows such correction by the Court on its own,"[a]ter giving any notice it considers appropriate." Although the government has not moved to correct the judgment by filing a motion under the criminal docket number, it has made its request in this case, which it has made known to defendant Ibianski. The motion has been pending for several months, and Ibianski has not voiced an objection. Therefore, the Court will amend the criminal judgment to reflect that one of the victims entitled to restitution is "ThyssenKrupp Materials NA, Inc." in the place of "Copper Brass."

C.

The government and ThyssenKrupp argue that the latter is entitled to step into the shoes of Ibianski and elect monthly distributions from the Plan, to which they are entitled to 25% under a garnishment order.

ERISA's so-called anti-alienation provision mandates that each qualified pension plan "provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The Supreme Court has held that this provision prohibited a union from imposing a constructive trust on an embezzling official's ERISA-protected pension rights, refusing to create an exception in cases of an employee's malfeasance or criminal misconduct. *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365 (1990). In 1995, the Fourth Circuit, citing *Guidry*, held that ERISA barred access by the government to pension benefits to satisfy a restitution order in a criminal case. *United States v. Smith*, 47 F.3d 681, 684 (4th Cir. 1995).

However, courts have determined that ERISA's anti-alienation provision must "give way" to other congressional enactments authorizing the collection of debts, such as the Internal Revenue

Code and the Federal Debt Collection Procedure Act (FDCPA). *United States v. Sawaf*, 74 F.3d 119, 123-24 (6th Cir. 1996). One of those enactments is the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A *et seq*. This Court has held that the "provisions of the MVRA constitute a Congressional exception to ERISA's anti-alienation provision when it comes to the enforcement of a restitution order against a criminal defendant." *United States v. Miller*, 588 F. Supp. 2d 789, 795-96 (W.D. Mich. 2008). The Sixth Circuit has not addressed the issue, but the other circuits that have considered the question have concluded that section 3613 of the MVRA supersedes ERISA's an anti-alienation provision. *See United States v. Novak*, 476 F.3d 1041, 1048 (9th Cir. 2006) (en banc); *United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006); *United States v. Hyde*, 497 F.3d 103, 107 (1st Cir. 2007); *cf. United States v. Hosking*, 567 F.3d 329, 334 (7th Cir. 2009) (considering the statute entitling trusts to favorable retirement plan tax treatment only if they contain an anti-alienation provision, 26 U.S.C. § 401(a)(13)(A)).

Nonetheless, although the government has a right to step into the defendant's shoes under a retirement plan, this right does not always guarantee that the government will be able to cash out the defendant's retirement plan unilaterally. *Novak*, 476 F.3d at 1063. Where a particular pension plan requires that a lump sum payment be made payable only with the spousal consent, the government may not cash out these plans without such consent. *Id.* at 1064. The Court agrees with the *Novak* court's conclusion "that criminal restitution orders can be enforced by garnishing retirement funds, but with the funds only payable when the defendant has a current, unilateral right to receive payments under the terms of the retirement plan." *Id.* at 1041; *see also* 18 U.S.C. § 3613(a) (stating that "a judgment imposing a fine may be enforced against all property or rights to

property of the person fined . . . ."). Ibianski's spouse has refused to consent to a lump-sum distribution.

ThyssenKrupp believes that Mr. Ibianski has a unilateral right under the terms of the Plan to elect to receive certain payments immediately, citing Plan section 3.8(b):

>   3.8 <u>Vested Termination Benefits.</u>
>   (a) <u>Deferred Vested Termination Benefit.</u> A Participant whose employment by the Employer Group is terminated prior to his Normal Retirement Date for a reason other than death *and who is not eligible for a Normal Retirement Benefit or an Early Retirement Benefit* shall be eligible to receive a Deferred Vested Termination Benefit or an Early Retirement Benefit if, and only if, as of the date of his termination of employment, he has a Nonforfeitable right to all or a portion of his Accrued Benefit . . . .
>   (b) <u>Immediate Vested Termination Benefit.</u> Upon application to the Committee, a Participant or former Participant *who is eligible for a Deferred Vested Termination Benefit* may receive an Immediate Vested Termination Benefit in lieu of a Deferred Vested Termination Benefit, commencing as of a date selected by the participant. . . . .

(Emphasis added). According to ThyssenKrupp, these plan sections authorize Ibianski to elect the default form of payment, a joint and 50% survivor annuity benefit, without spousal consent. Under 15 U.S.C. §§ 1672-73, garnishments are limited to 25% of disposable earnings, which includes "periodic payments pursuant to a retirement plan." But ThyssenKrupp reasons that it is entitled to, and is requesting, only 25% of the monthly installment payment that would result from electing the annuity benefit.

ThyssenKrupp has not provided enough information to support its assertions. By its terms, section 3.8(b) only applies to those who are eligible for a Deferred Vested Termination Benefit. Section 3.8(a) states that a participant is eligible for a Deferred Vested Termination Benefit if (1) his employment is terminated prior to the Normal Retirement Date for a reason other than death; (2) he is not eligible for a Normal Retirement Benefit; (3) he is not eligible for an Early Retirement

Benefit; and (4) he has a Nonforefeitable right to all or a portion of their Accrued Benefit, as determined by the participant's years of service. ThyssenKrupp has not provided the sections of the Plan that would allow the Court to determine if Ibianski is eligible to receive a Normal Retirement Benefit or an Early Retirement Benefit. Without knowing Ibianski's eligibility for these benefit, the Court cannot determine if Ibianski is entitled to receive a Deferred Vested Termination Benefit under section 3.8(a) of the Plan. Because eligibility for an Immediate Vested Termination Benefit under section 3.8(b) is dependant upon satisfying section 3.8(a), ThyssenKrupp has not shown that Ibianski has a current, unilateral right to his benefits under the Plan. Under the rule of *Novak*, Thyssen is not entitled to relief without presenting more information. *Novak*, 476 F.3d at 1041.

### III.

The criminal judgment underlying the present garnishment action must be amended to reflect the correct name of the victim entitled to restitution. The Court has the authority under Federal Rule of Criminal Procedure 36 to do so and will so order. However, the parties have not provided enough information to show that Ibianski has a unilateral right to receive payments under his retirement plan, and therefore that the plan benefits are subject to garnishment, as the parties have requested.

Accordingly, it is **ORDERED** that the government's motion for an order directing payments from the defendant's pension plan [dkt. #19] is **GRANTED IN PART AND DENIED IN PART**. The criminal Judgment and Commitment in case number 07-20632 shall be **AMENDED** to reflect that one of the victims entitled to restitution is "ThyssenKrupp Materials NA, Inc." in the place of "Copper Brass." The motion is **DENIED WITHOUT PREJUDICE** in all other respects.

It is further **ORDERED** that non-party ThyssenKrupp Materials NA, Inc.'s motion to direct the garnishee to pay a portion of the defendant's monthly pension benefits [dkt. #17] is **DENIED WITHOUT PREJUDICE.**

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: July 26, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 26, 2016.

s/Susan K. Pinkowski<br>
SUSAN K. PINKOWSKI